IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

ROBERT MATOR AND NANCY MATOR,      )
INDIVIDUALLY AND AS                )
REPERESENTATIVES OF A CLASS OF     )          2:21-CV-00403-MJH
PARTICIPANTS AND BENEFICIARIES     )
IN AND ON BEHALF OF THE WESCO      )
DISTRIBUTION, INC. RETIREMENT      )
SAVINGS PLAN;                      )
                                   )
          Plaintiffs,

     vs.


WESCO DISTRIBUTION, INC., AND;
THE ADMINISTRATIVE AND
INVESTMENT COMMITTEE FOR
WESCO DISTRIBUTION, INC.
RETIREMENT SAVINGS PLAN, JOHN
AND JANE DOES 1-30,

          Defendants,

OPINION AND ORDER

Plaintiffs, Robert Mator, and Nancy Mator, Individually and as Representatives of a

Class of Participants and Beneficiaries in and on behalf of the Wesco Distribution, Inc.

Retirement Savings Plan (Plan), bring claims for Breach of Duty under the Employee Retirement

Income Security Act (29 U.S.C. §§ 1001-1461) (ERISA) (Count I).  The duties at issue in Count

I are the Duty of Prudence and the Duty of Loyalty.  In addition, at Count II, Plaintiffs set forth a

claim for Failure to Adequately Monitor Other Fiduciaries Under ERISA (Count II).  Both

Counts are asserted against Defendants, Wesco Distribution, Inc., The Administrative and

Investment Committee for Wesco Distribution, Inc. Retirement Savings Plan, and John and Jane

Does 1-30. (ECF No. 1).   Defendants moved to dismiss pursuant to Fed. R. Civ. 12(b)(1) and

Fed. R. Civ. P. 12(b)(6).  (ECF No. 27).  The matter is now ripe for consideration.

Upon consideration of Plaintiffs' Complaint (ECF No. 1), Defendants' Motion to Dismiss (ECF No. 27), the respective briefs of the parties (ECF Nos. 28, 35-36), the arguments of counsel, Plaintiffs' Notices of Supplemental Authority and  Defendants' responses to the same (ECF Nos. 38, 40, 41, and 42), and for the following reasons,  Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(1) will be denied, and Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6) will be granted.   Plaintiffs' Complaint will be dismissed; however, Plaintiffs will be granted leave to amend.

I.      Background

Plaintiffs and their putative class bring claims against the Defendants, as ERISA fiduciaries, for not protecting Defined Contribution Plan participants and their retirement funds by failing to evaluate fees and monitor costs assessed to the Plan. (ECF No. 1 at ¶¶ 4-5, 9). Plaintiffs' Complaint asserts two claims under ERISA:  1) Breach of Duty of Prudence by selecting a Retirement Plan Service (RPS) provider that charged imprudent and unreasonable fees, selecting share class funds with excessive expenses, and a Breach of Duty of Loyalty; and 2) Failure to adequately monitor other fiduciaries who were tasked with monitoring and evaluating RPS providers. *Id*. at ¶¶ 124-144.

Plaintiffs' Breach of ERISA duty Count I concerns breaches of Duties of Prudence and Loyalty.  The Duty of Prudence claim avers two components, an excessive RPS fees and excessive share class expenses.  As regards excessive RPS fees, Plaintiffs aver that, during the Class Period, the Plan paid annual RPS fees of between $159 and $194 per participant, while reasonable annual RPS fees for similar size plans averaged $41 per participant.  *Id*. at ¶ 17. Plaintiffs aver that this discrepancy was caused by Defendants' decision to retain Wells Fargo Bank, N.A. for RPS and by their failure to seek competitive bids or otherwise determine the

market for RPS fees.  *Id.* at ¶ 18.  Plaintiffs aver that excessive RPS fees caused them to sustain

reduced account balances and diminished investment returns.  *Id.* at ¶ 19.  As regards excess

share class expense claims, Plaintiffs aver that the Defendants consistently chose mutual fund

share classes with higher operating expenses (retail shares) when identical lower-cost shares

(institutional shares) of the same funds were available. *Id.* at ¶ 103.  Accordingly, Plaintiffs aver

that Defendants breached their Duty of  Prudence to Plan participants, including Plaintiffs, by

failing to employ or follow a prudent process to critically or objectively evaluate the availability

of lower RPS fees and lower cost, institutional, share classes of certain mutual funds available to

the Plan.  *Id.* at ¶ 133.

In their Motion to Dismiss, Defendants argue that Plaintiffs fail to state a viable claim

under ERISA.  (ECF No.  27).   In particular, Defendants maintain that Plaintiffs fail to state

claims for breach of ERISA's Duty of Prudence and/or of Duty of Loyalty[1], and for Derivative

Failure-to-Monitor claims.  *Id*.  Defendants also maintain that this Court lacks subject matter

jurisdiction over most of Plaintiffs' Share-Class claims due to lack of Article III standing.  *Id*.

II.    Standards of Review

a.  Fed.R. Civ. P. 12(b)(1)

An action must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction if

a plaintiff has not suffered an injury that gives her Article III constitutional standing to bring a

claim. *See, e.g., Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 883, 885 (3d Cir.

2020) (explaining that "[c]onstitutional standing [] is properly tested under Rule 12(b)(1) . . . ."

---

[1] Defendants also seek dismissal of any Count I Duty of Loyalty claim.  In their response, Plaintiffs concede that the Complaint does not allege a claim for Breach of the Duty of Loyalty, and Plaintiffs request that the Court rule that any such claim is withdrawn and dismissed. Therefore, Plaintiff's Breach of Loyalty claim at Count I will be dismissed.  The Defense Motion to Dismiss will be moot, and not further addressed herein.

and holding that the district court properly dismissed the lawsuit for lack of standing but erred in addressing the merits when doing so).

        b.  Fed. R. Civ. P. 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it

must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.    Discussion

A.   Fed. R. Civ. 12(b)(1)-Lack of Standing

Defendants contend that this Court should dismiss the majority of Plaintiffs' excessive share class expense claims because Plaintiffs lack Article III standing. Specifically, Defendants argue that, in the circumstance of a defined contribution plan, if Plan fiduciaries selected an

imprudent or overpriced investment for inclusion within a plan fund portfolio, as alleged in the Complaint, said selection would harm only those plan participants who invested their individual account assets into that Fund.   Defendants maintain that Plaintiffs claiming ERISA fiduciary breach of duty only satisfy Article III standing to the extent they seek redress for injuries that they themselves experienced, but that said Plaintiffs lacked standing for generalized injuries to an ERISA plan for Funds in which they did not participate.   Defendants note that, in their Complaint, Plaintiffs challenge the Defendants' selection of share class investments for 19 Funds, but that Plaintiffs invested in only two of the challenged Funds.  Therefore, Defendants argue that, because Plaintiffs would gain nothing by proving imprudent investments in those Funds that plaintiffs never purchased, they lack Article III standing on those claims.

Plaintiffs argue that they have class standing to pursue claims as to all of the investment Funds available to Defined Contribution Plan participants throughout the Class Period. Specifically, they maintain that Plaintiffs' interests align with the interests of class members who had invested in higher-cost share class Funds, regardless of whether Plaintiffs actually invested in those Funds.  Plaintiffs assert that courts have rejected the argument that standing for an ERISA challenge in a defined contribution plan must be confined to participants who actually invested in the relevant Funds at issue in the case.

As regards standing in general, the "irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citations omitted). The injury-in-fact element requires a showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (citations omitted). The mere act of filing a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 1547 n.6 (citation omitted). Similarly, the mere fact that ERISA plan participants purport to sue in a derivative capacity "on behalf of the plan," as Plaintiffs allege here, does not absolve their obligation to "satisfy Article III's individualized-injury requirement." *Patterson*, 2019 WL 4934834, at *5. Plaintiffs must demonstrate standing for "each claim" and "for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations omitted); see also *Thorne,* 980 F.3d at 886 (explaining that the plaintiff "has the burden to establish standing 'for each type of relief sought.'") (internal citations omitted).

In *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), the Supreme Court held that participants in a defined-benefit plan lacked standing to bring ERISA claims because their entitled payments were fixed.  *Id*. at 1628.  Therefore, because payments were fixed, plan participants would not monetarily gain from a successful suit.  *Thole*, though, distinguished its holding from defined-contribution plans.  The Court explained that, for a defined-benefit plan, "benefits are fixed and will not change, regardless of how well or poorly the plan is managed." *Id*. at 1620. "By contrast, in a defined-contribution plan, ... retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Id*. at 1618.

As asserted by Plaintiffs, post-*Thole* courts have rejected arguments that a plaintiff's defined contribution plan ERISA challenge must be confined to the individual funds in which he or she invested.  *Cates v. Trs. of Columbia Univ.*, No. 16 Civ. 6524, 2021 WL 964417, at *2

(S.D.N.Y. Mar. 15, 2021); *Parmer v. Land O'Lakes, Inc.*, Civ. No. 20-1253, 2021 WL 464382, at *3 (D. Minn. Feb. 9, 2021); *Kurtz v. Vail Corp.*, ⸻ F. Supp. 3d ⸻, ⸻, No. 20-cv-500, 2021 WL 50878, at *6 (D. Colo. Jan. 6, 2021); *Silva v. Evonik Corp.*, Civ. No. 20-2202, slip op. at *3 n.3 (D.N.J. Dec. 30, 2020), DE 25; *Boley v. Univ. Health Servs., Inc.*, ⸻ F. Supp. 3d ⸻, ⸻, 2020 WL 6381395, at *2 (E.D. Pa. Oct. 30, 2020); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *4 (D.N.J. Apr. 13, 2021).   "*Thole* suggests ... that a plaintiff has standing to sue on behalf of the Plan, even if that particular plaintiff was not invested in each one of the Plan's investment vehicles." *McGowan*, 2021 WL 1399870 at *4. If a defined contribution plan's participants "have alleged an injury to their own investments by virtue of the Fiduciaries' mismanagement, sufficient to create a case or controversy for Article III purposes," then ERISA "grants the Participants a cause of action to sue on behalf of the Plan[ ]." *Id*.  The *McGowan* Court held that plaintiffs, who had not individually invested in every imaginable fund, were not deprived of their broader standing to "sue on behalf of the Plan and to 'seek relief under § 1132(a)(2) that sweeps beyond plaintiffs own injury.' " *McGowan v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870 (D.N.J. Apr. 13, 2021) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)).   Likewise, the Third Circuit in *Sweda v. Univ. of Penn.*, 923 F.3d 320 (3d Cir. 2019), cert. denied, 140 S. Ct. 2565 (2020) adopted a broader view of ERISA claims standing where the plaintiffs sued with respect to a defined contribution plan that offered multiple investment "tiers," but where plaintiffs themselves had invested in only some of the tiers. *Id*. at 331 n.6, 332 n.7.   While Defendants contend that this Court should reject these cases and hold that participants in defined-contribution plans have no standing to sue other than for claims that arise from those Funds where plaintiffs actually invested,  given the sound

guidance from the Supreme Court, the Third Circuit, and district courts within the Third Circuit, this Court finds the Defendants' contention lacks merit.

Here, Plaintiffs satisfy the requirements for Article III standing.  Plaintiffs are participants in a defined contribution plan that was managed by the Defendants. Plaintiffs' suit on behalf of the Plan consequently asserts claims for concrete injuries-in-fact.  In the event that Plaintiffs lawsuit is successful, a restoration of benefits back to the Plan would result in a financial benefit to all individual participants.  Therefore, Plaintiffs satisfy the requirements necessary to establish standing.

Accordingly, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) will be denied.

B.  Fed. R. Civ. P.  12(b)(6)

1.  Duty of Prudence

a.  Excessive Fees Challenge

Defendants argue that Plaintiffs allege no facts about Defendants' process for managing the Plan's RPS fees.  Defendants maintain that Plaintiffs only infer, through conclusory allegations, that WESCO's process was improper and imprudent. Plaintiffs allege that the Plan paid between $159-194 on average per participant, while "reasonable" fees for RPS by other plans were paid at $41 per participant.   According to Defendants, such conclusory allegations are insufficient because ERISA does not impose a duty upon fiduciaries to choose the least costly provider for recordkeeping or for any other administrative services.  Defendants contend that the Department of Labor's guidance provides that "[c]ost is only one factor to be considered

in selecting a service provider."[2] Defendants also argue that  DOL guidance warns that fiduciaries cannot "consider fees in a vacuum" because fees "are only one part of the bigger picture, including … the extent and quality of the services provided." *See* Dep't of Labor, A Look at 401(k) Plan Fees at 9 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resourcecenter/publications/a-look-at-401k-plan-fees.pdf . Defendants challenge Plaintiffs' Complaint because Plaintiffs fail to allege any facts to compare the breadth and level of services provided by Wells Fargo and other unnamed comparator plans.  Plaintiffs argue that the Complaint plausibly alleges a claim for excessive fees. Plaintiffs assert that the Complaint's allegations are substantially the same as the allegations in *Sweda*, which reversed the district court's dismissal of a breach of fiduciary duty claim. *Sweda*, 923 F.3d at 330-32.

Resolution of Defendants' Motion to Dismiss requires analysis of whether Plaintiffs' Complaint meets the applicable pleading standard for an ERISA breach of fiduciary duty claim. Because Plaintiffs in an ERISA claim may not always have access to the information necessary to support their claim, courts have evaluated the pleadings in ERISA claims with special scrutiny. In *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (2019), the Third Circuit declined to extend the rigors of *Twombly*'s antitrust pleading rule to breach of fiduciary claims under ERISA, because "'[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party.'" *Id.* at 326 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th

---

[2] See Dep't of Labor, Employee Benefits Security Administration, *Tips for Selecting and Monitoring Service Providers for Your Employee Benefit Plan*, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/factsheets/tips-for-selecting-and-monitoring-service-providers.pdf.

Cir. 2009)).  Rather, under *Sweda*, the Third Circuit instructs that, complaints alleging ERISA

breach of fiduciary duty claims, should be evaluated, in three steps, as follows:

> First, [the Court] will note the elements of a claim; second, [the Court] will identify
> allegations that are conclusory and therefore not assumed to be true, and; third,
> accepting the factual allegations as true, [the Court] will view them and reasonable
> inferences drawn from them in the light most favorable to [the Plaintiffs] to decide
> whether "they plausibly give rise to an entitlement to relief." *Connelly v. Lane
> Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679,
> 129 S.Ct. 1937). Pleadings that establish only a mere possibility of misconduct do
> not show entitlement to relief.

*Id*. at 326 (some citations omitted).   Thus, "[t]he complaint should not be 'parsed piece by piece

to determine whether each allegation, in isolation, is plausible.'" *Sweda*, 923 F.3d at 331

(quoting *Braden*, 588 F.3d at 594). "[B]ecause participants usually do not have direct evidence

of how fiduciaries reached their decisions, the complaint need only provide an inference of

mismanagement by 'circumstantial evidence,' rather than 'direct' allegations of matters observed

firsthand." *Singer v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870 at *5, 2021

U.S. Dist. LEXIS 72282 at *13 (D.N.J. Apr. 13, 2021) (quoting *Sweda*, 923 F.3d at 332).  That

said, allegations must cross "the threshold from possible to probable." *Johnson v. PNC Fin.

Servs. Grp., Inc.*, 2:20-CV-01493-CCW, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021).

First, the elements of a claim for breach of fiduciary duty under ERISA are as follows:

"'(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan.'"

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–

26 (3d Cir. 2007)).  Defendants' Motion to Dismiss centers on the second element, namely

whether the Complaint adequately pleads a breach of an ERISA-imposed duty.   Here, said duty

is the Duty of Prudence for plan fiduciaries. Under ERISA, "a fiduciary shall discharge his duties

with respect to a plan solely in the interest of the participants and beneficiaries and—with the

care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). As such, in addition to monitoring a plan's investment options, "[f]iduciaries must also understand and monitor plan expenses" because " '[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan' by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1826, 191 L.Ed.2d 795 (2015)).

While specific combinations of facts that may give rise to an inference of recordkeeping imprudence will vary from case to case, courts have looked to factors such as whether a plan engages in competitive bidding for recordkeeping services, uses one or more recordkeepers, leverages its size to obtain reduced fees, and whether plaintiffs provide a "meaningful benchmark" from which to measure a fiduciary's alleged imprudence. *See, e.g., Pinnell v. Teva Pharms. USA, Inc.*, Civil Action No. 19-5738, 2020 WL 1531870, 2020 U.S. Dist. LEXIS 55617 (E.D. Pa. Mar. 31, 2020). Next, the Court must eliminate conclusory allegations from the Complaint. Finally, the Court will take any factual allegations as true and will view them and reasonable inferences drawn from them in the light most favorable to Plaintiffs.

Here, after examining allegations regarding the Wells Fargo's fees and expenses at issue, the Complaint alleges no facts about the level of services provided to the Plan's participants in exchange for the fees paid. Likewise, the Complaint does not allege the complete nature and scope of services provided by the alleged comparator plans. Instead, the Complaint compares the Plan's full amount of direct and indirect fees to other plans that only reference direct fees. As aptly phrased by Defendants, this is an "apples-to-oranges" comparison similar to what Judge

Wiegand addressed in *Johnson*. *See* 2021 WL 3417843, at *4 (rejecting plaintiffs' allegations because they "account[ed] for only direct recordkeeping fees" and ignored "revenue sharing (i.e. indirect fees)," which showed the other plans actually "pa[id] much more").   Before Plaintiffs' claims can pass from "possible to the plausible," an apples-to-apples comparison is necessary in order to place the Defendants on proper notice and to allow for assessment of the comparisons alleged.  Plaintiffs' mere price tag to price tag comparison, accompanied by conclusory allegations and lack of detail as to the categories of fees, does not sufficiently plead a breach of Duty of Prudence.  Therefore, without pleading additional details as to fee structures and services provided, Plaintiffs' allegations only infer a possibility but not a plausibility that Defendants' acted imprudently.

Accordingly, Defendants' Motion to Dismiss, as regards Count I's excessive RPS fee claim, will be granted.   As it is not clear at this stage whether amendment would be futile, Plaintiffs will be granted leave to amend.

        b.  Lower-Cost Share Classes

In addition to their averments regarding excessive RPS fees under Count I, Plaintiffs aver that Defendants imprudently chose higher cost mutual Fund share classes, even though less expensive share classes for the same Funds were available.  In their motion to dismiss Count I, Defendants argue that that a fiduciary may have perfectly legitimate and prudent reasons to not choose the lowest-cost institutional share class of a particular fund.  Defense maintains that, without more facts to support Plaintiffs' assertions of imprudence based upon share class costs, Plaintiffs do not sufficiently plead their claim.

Plaintiffs argue that the Complaint plausibly alleges a claim for purchase of imprudent share classes.  Specifically, they contend that the Complaint alleges that Defendants breached

their fiduciary duties when they imprudently chose and retained mutual Fund share class investments that had higher operating expenses when lower-cost shares of the same Fund were readily available to the Plan.  Plaintiffs maintain that such allegations sufficiently plead Defendants' imprudent management of the plan. (ECF No. 1 at ¶¶ 99-105).

There is a dearth of Third Circuit case law that addresses ERISA prudent management criteria in relation to the purchase of higher cost (retail) shares versus lower cost (institutional) shares.   However, "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach." *White v. Chevron Corp.*, No. 16-0793, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), aff'd, *White III*, 752 F. App'x 453.   For example, the Seventh Circuit, in *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), rejected the claim that fiduciaries breached any Duty of Prudence "by offering 'retail' mutual funds" instead of "'institutional' investment" classes. *Id*. at 670; see also *Kong v. Trader Joe's Co.*,  2020 WL 7062395, at *5 (C.D. Cal. Nov. 30, 2020) , at *4 (rejecting challenge to share class of funds because higher-cost share classes may have offered other benefits that would have offset any additional costs); *Marks v. Trader Joe's Co*., 2020 WL 2504333, at *7-8 (C.D. Cal. Apr. 24, 2020) (dismissing claims and holding that plaintiffs alleged no specific facts to suggest breach of fiduciary duty, and merely offering institutional class shares instead of investor class shares was not enough); *Kurtz v. Vail Corp.*, 511 F.Supp.3d 1185, 1199 (D. Colo. 2021); *Robert Lauderdale et al. v. NFP Ret., Inc. et al.*, 2021 WL 3828646, at *8-9 (C.D. Cal. Aug. 18, 2021) (dismissing share-class cost claims where plaintiffs only allege that some funds could be replaced with lower-cost options).

Despite an absence of Third Circuit authority that addresses the sufficiency of Plaintiffs' share class claim allegations to support a claim for breach of ERISA fiduciary duty, the

persuasive authority matches the principles in *Sweda* discussed above.   To plead an imprudence claim, Plaintiffs must aver more than "a mere possibility of misconduct."   *Sweda*, 923 F.3d at 26. Here, the Plaintiffs aver that Defendants imprudently chose mutual fund share classes with higher costs even though less expensive class shares of the same funds were available.    As with Plaintiffs' excessive RPS fees claim, these allegations are conclusory and contain insufficient facts to support that Defendants' choice of such share classes breached their Duty of Prudence to the Plaintiffs.    Although Plaintiffs attempt to suggest that a more lax pleading standard should be applied to their Complaint, *Sweda* still supports that the sound principles from *Twombly/Iqbal* remain. Plaintiffs must aver some non-conclusory factual basis that reaches beyond the threshold of a plausible claim rather than a possible claim.   Plaintiffs have not yet done so in this case.

Accordingly, Defendants' Motion to Dismiss, as regards Plaintiffs' share class claim under Count I, will be granted.   Count I of Plaintiffs' Complaint will be dismissed.   As it is not clear at this stage whether amendment would be futile, Plaintiffs will be granted leave to amend.

2.   Failure to Monitor Claim (Count II)

Finally, Defendants argue that Plaintiffs' Count II Failure-To-Monitor claim fails as a matter of law because it is derivative of Plaintiffs' Count I breach of fiduciary claims.   Plaintiffs respond that they have sufficiently pleaded breach of fiduciary claims at Count I such that Defendants' Motion to Dismiss Count II should be denied.   Courts have held that derivative claims, such as failure to monitor, cannot survive without a sufficiently pleaded underlying breach of fiduciary duty claim. *See Scalia v. WPN Corp.*, 417 F.Supp.3d 658, 669 (W.D. Pa. 2019) (citing *In re Allergan ERISA Litig.*, 2018 WL 8415676, at *7 (D. N.J. July 2, 2018); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)).   Therefore, because

Plaintiffs' underlying claims at Count I will be dismissed, their derivative failure to monitor derivative claim at Count II fails.

Accordingly, Defendants' Motion to Dismiss Count II will be granted.   Because leave has been granted to amend the underlying claims at Count I, Plaintiffs will also be granted leave to amend Count II.

ORDER

After consideration of Plaintiffs' Complaint (ECF No. 1), Defendants' Motion to Dismiss (ECF No. 27), the respective briefs of the parties (ECF Nos. 28, 35-36), the arguments of counsel, Plaintiffs' Notices of Supplemental Authority and  Defendants' responses to the same (ECF Nos. 38, 40, 41, and 42), and for the foregoing reasons, the Court enters the following Order:

1. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(1) is denied.

2. Based upon Plaintiffs' withdrawal of and request for voluntary dismissal of their Duty of Loyalty claim under Count I, said claim is dismissed.

3. Based upon the dismissal of the Duty of Loyalty claim in Count I, the Defendants' Motion to Dismiss said claim is moot.

4. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6) is granted.   Count I and Count II of Plaintiffs' Complaint are dismissed.  Plaintiffs are granted leave to amend.

Plaintiffs shall file any amended complaint on or before October 18, 2021.   Should no amended complaint be filed by said date, the clerk will mark the case closed.

DATED this 4th day of October, 2021.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge

16