IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

ROBERT MATOR AND NANCY MATOR,   )
INDIVIDUALLY AND AS   )
REPRESENTATIVES OF A CLASS OF   )            2:21-CV-00403-MJH
PARTICIPANTS AND BENEFICIARIES   )
IN AND ON BEHALF OF THE WESCO   )
DISTRIBUTION, INC. RETIREMENT   )
SAVINGS PLAN;   )
   )

              Plaintiffs,

  vs.


WESCO DISTRIBUTION, INC., AND;
THE ADMINISTRATIVE AND
INVESTMENT COMMITTEE FOR
WESCO DISTRIBUTION, INC.
RETIREMENT SAVINGS PLAN, JOHN
AND JANE DOES 1-30,

              Defendants,

OPINION AND ORDER

Plaintiffs, Robert Mator, and Nancy Mator, Individually and as Representatives of a

Class of Participants and Beneficiaries in and on behalf of the Wesco Distribution, Inc.

Retirement Savings Plan (Plan), bring claims for Breach of Duty under the Employee Retirement

Income Security Act (29 U.S.C. §§ 1001-1461) (ERISA) (Count I).  In addition, at Count II,

Plaintiffs set forth a claim for Failure to Adequately Monitor Other Fiduciaries Under ERISA

(Count II).  Both Counts are asserted against Defendants, Wesco Distribution, Inc., The

Administrative and Investment Committee for Wesco Distribution, Inc. Retirement Savings Plan,

and John and Jane Does 1-30. (ECF No. 44).   Defendants moved to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6).  (ECF No. 48).  The matter is now ripe for consideration.

Upon consideration of Plaintiffs' Amended Complaint (ECF No. 44), Defendants' Motion to Dismiss (ECF No. 48), the respective briefs of the parties (ECF Nos. 49-51, 53-57), the Plaintiffs' Notices of Supplemental Authority and Defendants' responses to the same (ECF Nos. 58-61), and for the following reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6) will be granted.   Plaintiffs' Amended Complaint will be dismissed; however, Plaintiffs will be granted leave to amend.

I.      Background

Plaintiffs and their putative class bring claims against the Defendants, as ERISA fiduciaries, for not protecting participants and their retirement funds by failing to evaluate fees and monitor costs assessed to the Plan. (ECF No. 44 at ¶¶ 5-6, 8).   Plaintiffs' Amended Complaint asserts two claims under ERISA:  1) Breach of Duty of Prudence by selecting a Retirement Plan Service (RPS) provider that charged imprudent and unreasonable fees, and offering share class funds with excessive expenses; and 2) Failure to adequately monitor other fiduciaries who were tasked with monitoring and evaluating RPS providers. *Id*. at ¶¶ 150-170.

Plaintiffs' Breach of ERISA duty Count I concerns breaches of Duties of Prudence.  The Duty of Prudence claim avers two components, excessive RPS fees and excessive share class expenses.   Plaintiffs aver that these fees and expenses can reduce of the value of defined contribution plan accounts and that the Plan's fiduciaries have control over these expenses.  *Id*. at ¶¶ 42-43.

Defined contribution plans have two primary methods for payment of recordkeeping and administrative services: "direct" payments from plan assets, and "indirect" revenue sharing payments from plan investments, such as mutual funds.  *Id*. at ¶ 67.   In a direct payment arrangement, the fiduciary contracts with the recordkeeper to obtain services in exchange for a

flat annual fee based upon the number of participants for which the recordkeeper will be providing services. *Id*. at ¶ 68. In an indirect revenue sharing payment arrangement, the mutual fund pays the plan's recordkeeper for providing recordkeeping and administrative services for the fund.  *Id*. at  ¶ 72.  However, because revenue sharing payments are asset-based, the fees can allegedly grow to unreasonable levels if plan assets grow while the number of participants, and thus the services provided, has not increased at a similar rate. *Id.*  Further, Plaintiffs aver that if plan assets decline, participants in revenue-sharing arrangements will not receive a sustained benefit of paying lower fees, because the recordkeeper will demand that the plan make up the shortfall through additional direct payments. *Id.*

As regards share class expenses, Plaintiffs allege that mutual funds offer their investors different share classes: retail and institutional.  *Id.* at ¶ 60.  Plaintiffs aver that retail share classes are marketed to individuals with small amounts to invest, while institutional share classes are offered to investors with large amounts to invest, as with large retirement plans.  *Id*.  Plaintiffs maintain that retail share classes incur higher fees, such that retail class investors receive lower returns. *Id*.

Plaintiffs allege that Wells Fargo, N.A., the Plan's recordkeeper from 2009 to 2020, was responsible for holding the Plan's assets in trust, tracking participants' contributions, earnings and investment accounts and executing trades as requested by Plan participants.  *Id*. at ¶ 94.  As recordkeeper, Wells Fargo allegedly offered the following services:  Internet access to accounts, transaction processing, quarterly participant statements, participant communications-including Plan investments disclosures and periodic participant newsletters, retirement education services-including various tools, such as Plan website retirement income calculators, telephone support to answer questions or give assistance to Plan participants, and a brokerage window to enable Plan

participants to invest in securities outside the Plan. *Id*. at ¶ 95.   Plaintiffs allege that Wells Fargo
charged the Plan direct and indirect fees for the  recordkeeping and administrative services and
that said fees were excessive compared to other similar-sized plans for similar services.  *Id*. at ¶
96.   During the Class Period, Plaintiffs aver they paid between $82 and $50 per year for direct
recordkeeping and administrative fees.  *Id*. at ¶ 98.  Those fees are summarized as follows:

| Direct Recordkeeping and Administrative Services Compensation Per-Participant Cost (source: Forms 5500) | | | | | | |
|---|---|---|---|---|---|---|
| | Plan Year | | | | | |
| | **2015** | **2016** | **2017** | **2018** | **2019** | *Average* |
| Participants | 8,486 | 9,043 | 8,179 | 8,232 | 8,870 | **8,562** |
| Direct Fees | $614,032 | $651,150 | $671,304 | $539,003 | $443,714 | **$583,840** |
| **Direct Per-Participant Fee** | $72 | $72 | $82 | $78 | $50 | **$68** |

*Id*.  Plaintiffs aver that mutual fund companies paid indirect fees to Wells Fargo as follows
during the Class Period:

| Year | Indirect Fees Paid to Wells Fargo by Mutual Fund Companies |
|---|---|
| 2015 | $752,446 |
| 2016 | $773,658 |
| 2017 | $840,637 |
| 2018 | $731,513 |
| 2019 | $917,662 |
| **Total** | **$4,015,916** |

*Id*. at ¶ 99.  During the Class Period, Plaintiffs and Plan participants each paid between $153 and
$185 per year in total retirement plan services expenses as follows:

| Direct and Indirect Recordkeeping and Administrative Services Compensation Per-Participant Cost (source: Forms 5500) | | | | | | |
|---|---|---|---|---|---|---|
| | **Plan Year** | | | | | |
| | **2015** | **2016** | **2017** | **2018** | **2019** | *Average* |
| Per-Participant Fee | $161 | $157 | $185 | $154 | $153 | **$162** |

*Id.* at ¶ 102.   Plaintiffs allege that the Plan's per-participant average fee expense of $154 exceeded the NEPC $40-$60 average per participant fee for similarly sized plans.[1]  *Id.* at  ¶ 104.

Plaintiffs allege that other similarly sized plans maintained an average per-participant fee of $41, provided the same services as Wells Fargo, and that Wells Fargo's services were not so unique as to justify paying more than four times such average fees.  *Id.* at ¶ 109.  On July 1, 2020, the Plan allegedly switched from Wells Fargo to Fidelity Investments, which charges a per participant fee of $53.  *Id.* at ¶ 112.

As regards excess share class expense claims, Plaintiffs aver that the Defendants consistently chose mutual fund share classes with higher operating expenses (retail shares) when identical lower-cost shares (institutional shares) of the same funds were available. *Id.* at ¶ 130. Plaintiffs allege that the selection of  higher cost, retail share classes to pay for Plan administrative expenses was not justified in this case, because Wells Fargo was charging higher direct recordkeeping service fees.  *Id.* at ¶ 134.

Accordingly, Plaintiffs aver that Defendants breached their Duty of Prudence to Plan participants, including Plaintiffs, by failing to employ or follow a prudent process to critically or

---

[1]https://cdn2.hubspot.net/hubfs/2529352/2019%20DC%20Plan%20and%20Fee%20Surv ey%20(progress%20report)/2019%20NEPC%20DC%20Plan%20Progress%20Report.pdf (last visited March 29, 2022).

objectively evaluate the availability of lower RPS fees and lower cost, institutional, share classes of certain mutual funds available to the Plan.  *Id*. at ¶¶ 158-159.

In their Motion to Dismiss, Defendants argue that Plaintiffs fail to state a viable claim under ERISA.  (ECF No.  49).   In particular, Defendants maintain that Plaintiffs fail to state claims for breach of ERISA's Duty of Prudence, and for derivative Failure-to-Monitor claims. *Id*.

After the parties had briefed the issues in Defendant's Motion to Dismiss, the United States Supreme Court issued its decision in *Hughes v. Nw. Univ.*, 142 S.Ct. 737 (2022). Defendants had previously moved to stay this case pending resolution of *Hughes*, which this Court denied.  Because of the perceived importance of the *Hughes* decision, the Court invited the parties to submit supplemental briefs.  (ECF No. 52).   Plaintiffs and Defendants submitted supplemental briefs and responses.  (ECF Nos.  53-57).   After this Court's review of the *Hughes* decision and the parties' submissions, the Supreme Court's holding neither shifts the pleading standards in Plaintiffs' ERISA claims nor changes this Court's prior or current analysis of Plaintiff's Complaint or Amended Complaint.

Following the close of briefing, Plaintiffs also filed a Notice of Supplemental Authority (ECF Nos. 58, 60) to which Defendants responded (ECF Nos. 59, 61).  Plaintiffs' first submission includes six cases, all out of circuit and out of district.  Upon review of the same, the Court is not persuaded that these cases change the legal standards and applications from its decision on Defendant's first Motion to Dismiss (ECF No. 27).    Plaintiffs' second submission includes a recent decision by Judge Wiegand of this district in *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2:20-CV-01493-CCW, 2022 WL 973581, at *1 (W.D. Pa. Mar. 31, 2022) ("*Johnson II*"). In *Johnson II*, Judge Wiegand was also addressing an amended complaint in an ERISA duty of

6

prudence claim with regard to recordkeeping claims.   As the Court will explain below, it does

not fundamentally disagree with Judge Wiegand's reasoning as presented in her evaluation of the

amended complaint, but the Court finds some distinctions that warrant a different result, albeit

with an additional leave to amend. Therefore, the focus of this Court's analysis will be whether

Plaintiffs' Amended Complaint has cured the pleading deficiencies identified in this Court's

October 4, 2021 Opinion and Order (ECF No. 43).

II.     Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir.

2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)).   "To survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir.

2014).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."   *Iqbal*, 556 U.S. at 678.   "Factual allegations of a complaint must be

enough to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   A

pleading party need not establish the elements of a *prima facie* case at this stage; the party must

only "put forth allegations that 'raise a reasonable expectation that discovery will reveal

evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.    Discussion

    1.  Duty of Prudence

        a.  Excessive Fees Challenge

Defendants argue that Plaintiffs' Amended Complaint only "window dresses" their prior allegations in comparing WESCO's total RPS fees to the total RPS fees for comparator plans for the same suite and scope of services and fails to cure the Complaint's pleading deficiencies. Specifically, Defendants argue that Plaintiffs still fail to plead requisite details about the specific type and scope of "services provided" to the WESCO Plan or to any of their proposed comparators.   Defendants maintain that Plaintiffs again offer conclusory averments that the recordkeepers of comparator plans "all offered identical or similar packages of service of the same or similar quality" to those received by the WESCO Plan.  (ECF No. 44 at ¶ 111). Defendants further contend that the Amended Complaint's source documents conflict with its averments.  Namely, that the 2018, 5500 Forms demonstrate that the services offered by Wells Fargo to the WESCO Plan differ materially from the services provided by comparator plans and other recordkeepers.

Next, Defendants argue that, even if Plaintiffs' Amended Complaint cures the factual allegations about the scope and services provided by the alleged comparator plans, the alleged fees charged are still not "apples to apples" comparisons, because the Amended Complaint compares the WESCO Plan, which includes both direct and indirect fees, to some comparator plans that include only direct fees.

In response, Plaintiffs argue that the Amended Complaint pleads new, detailed facts regarding the scope and type of services provided by comparator plans.  Specifically, they maintain the Amended Complaint avers:

Plaintiffs do not have access to the recordkeeping agreement between Wells
Fargo and Wesco and so lack knowledge regarding that agreement. However,
Plaintiffs and other Plan participants received or had access to the following Plan
services from Wells Fargo: Internet access to their accounts through the Plan
website maintained by Wells Fargo; transaction processing (buying and selling
Plan investments); quarterly participant statements; participant communications,
including Plan investment disclosures and periodic participant newsletters;
retirement education services, including various tools such as retirement income
calculators available on the Plan website; and a telephone support to answer
questions or give assistance to Plan participants. Wells Fargo also offered a
brokerage window that allowed Plan participants to invest in securities that were
not Plan investment options.

(ECF No. 49 at ¶ 95).

Resolution of Defendants' Motion to Dismiss requires analysis of whether Plaintiffs'

Complaint meets the applicable pleading standard for an ERISA breach of fiduciary duty claim.

Because Plaintiffs in an ERISA claim may not always have access to the information necessary

to support their claim, courts have evaluated the pleadings in ERISA claims with special

scrutiny. In *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (2019), the Third Circuit declined to extend

the rigors of *Twombly*'s antitrust pleading rule to breach of fiduciary claims under ERISA,

because "'[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he

challenges would invert the principle that the complaint is construed most favorably to the

nonmoving party.'" *Id.* at 326 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th

Cir. 2009)). Rather, under *Sweda*, the Third Circuit instructs that, complaints alleging ERISA

breach of fiduciary duty claims, should be evaluated, in three steps, as follows:

First, [the Court] will note the elements of a claim; second, [the Court] will identify
allegations that are conclusory and therefore not assumed to be true, and; third,
accepting the factual allegations as true, [the Court] will view them and reasonable
inferences drawn from them in the light most favorable to [the Plaintiffs] to decide
whether "they plausibly give rise to an entitlement to relief." *Connelly v. Lane
Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679,
129 S.Ct. 1937). Pleadings that establish only a mere possibility of misconduct do
not show entitlement to relief.

*Id.* at 326 (some citations omitted).   Thus, "[t]he complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Sweda*, 923 F.3d at 331 (quoting *Braden*, 588 F.3d at 594). "[B]ecause participants usually do not have direct evidence of how fiduciaries reached their decisions, the complaint need only provide an inference of mismanagement by 'circumstantial evidence,' rather than 'direct' allegations of matters observed firsthand." *Singer v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870 at *5, 2021 U.S. Dist. LEXIS 72282 at *13 (D.N.J. Apr. 13, 2021) (quoting *Sweda*, 923 F.3d at 332).   That said, allegations must cross "the threshold from possible to probable." *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2:20-CV-01493-CCW, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) ("*Johnson I*").

First, the elements of a claim for breach of fiduciary duty under ERISA are: "'(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)). Defendants' Motion to Dismiss centers on the second element, namely whether the Amended Complaint adequately pleads a breach of an ERISA-imposed duty.   Here, said duty is the Duty of Prudence for plan fiduciaries. Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). As such, in addition to monitoring a plan's investment options, "[f]iduciaries must also understand and monitor plan expenses" because " '[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan' by decreasing its immediate value,

11

and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Sweda*, 923 F.3d at 328 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1826, 191 L.Ed.2d 795 (2015)).

While specific combinations of facts that may give rise to an inference of recordkeeping imprudence will vary from case to case, courts have looked to factors such as whether a plan engages in competitive bidding for recordkeeping services, uses one or more recordkeepers, leverages its size to obtain reduced fees, and whether plaintiffs provide a "meaningful benchmark" from which to measure a fiduciary's alleged imprudence. *See, e.g., Pinnell v. Teva Pharms. USA, Inc.*, Civil Action No. 19-5738, 2020 WL 1531870, 2020 U.S. Dist. LEXIS 55617 (E.D. Pa. Mar. 31, 2020). Next, the Court must eliminate conclusory allegations from the Complaint. Finally, the Court will take any factual allegations as true and will view them and reasonable inferences drawn from them in the light most favorable to Plaintiffs.

With regard to the Excessive Fees Challenge in Plaintiff's original Complaint, this Court held that "the Complaint allege[d] no facts about the level of services provided to the Plan's participants in exchange for the fees paid." (ECF No. 43 at p. 12). The Court also held that "the Complaint [did] not allege the complete nature and scope of services provided by the alleged comparator plans" and only compared "the Plan's full amount of direct and indirect fees to other plans that only reference direct fees." *Id.* In sum, the Court held that the Complaint's allegations needed to engage in more than a "price tag to price tag comparison" with more than "conclusory allegations and lack of detail as to the categories of fees." *Id.* at ¶ 13. Therefore, the Court determined that Plaintiffs' Complaint, at minimum, needed to plead additional details as to fee structures and services to infer a plausibility that Defendants acted imprudently. *Id.*

Here, the Amended Complaint again avers primarily a price tag to price tag comparison of Wells Fargo's and alleged comparator plans' recordkeeping services.  In attempting to highlight services beyond the price tags, Plaintiffs also aver a comparison of services as follows:

| Wells Fargo Services to the Plan (ECF No. 45 at ¶¶94-95) | Services to Comparator Plans (ECF No. 45 at ¶ 111) |
|---|---|
| • Holding assets in trust<br>• Transaction processing (buying and selling Plan investments)<br>• Quarterly participant statements;<br>• Internet access to participant accounts through the Plan website maintained by Wells Fargo<br>• Participant communications, including Plan investment disclosures and periodic participant newsletters<br>• Retirement education services, retirement income calculators and telephone support<br>• Brokerage window | • Directed trustee or custodian services<br>• Transaction processing<br>• Quarterly participant statements<br>• Website access to participant accounts<br>• Participant communications, including call centers to handle customer service<br>• Plan disclosures<br>• Periodic newsletters<br>• Participant education services<br>• Annual discrimination testing<br>• Form 5500 preparation<br>• Auto enrollment |

The Complaint similarly provided a list of these services (ECF No. 1 at ¶ 41), but as the Court noted before, Plaintiffs did not allege the complete nature and scope of services provided by the alleged comparator plans. Likewise, the Amended Complaint relies on generalized allegations with regard to these services.  While recordkeepers, like Wells Fargo and the alleged comparators, might offer similar services, neither the Complaint nor the Amended Complaint address the types or levels of services that any plan contracted to receive.  In this instance, a side by side list comparison does not sufficiently place the Defendants on notice or slide Plaintiffs claim from "possible to plausible."   At the risk of overextending the apples-to-apples analogy, Plaintiffs may have identified two apples, but one could be a Honeycrisp and the other a Granny Smith.

Plaintiffs have maintained that they are not required to plead more at this stage with regard to the scope and breadth of services in part because that they do not have the recordkeeping agreement between the Plan and Wells Fargo.  However, ERISA (29 U.S.C. § 1024(b)(4)) requires Defendants to provide said agreement upon a participant's written request. Despite this access, neither Plaintiffs nor their counsel have endeavored to obtain the recordkeeping agreement and include any relevant factual allegations regarding the same. Moreover, with regard to Plaintiffs' proffered benchmark for fee amounts, the 2019 NEPC survey does not contain any information about the services provided to the surveyed plans. Thus, the Amended Complaint continues an incongruent comparison.

Plaintiffs' Amended Complaint still does not pass from "possible to the plausible," and it fails to offer a requisite apples-to-apples comparison in order to place the Defendants on proper notice and to allow for assessment of the comparisons alleged. The Amended Complaint still offers a mere price tag to price tag comparison, accompanied by conclusory allegations and lack of detail as to the categories of services.   It does not sufficiently plead a breach of Duty of Prudence.  Plaintiffs' counsel's reliance on *Johnson II* is understandable, but unlike there, the Amended Complaint here relies on a benchmark without any sufficient factual foundation. Further, Judge Wiegand recognized the well-settled principal "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Johnson II*, 2022 WL 973581at *6 (quoting *Comau LLC v. Blue Cross Blue Shield of Mich.*, No-19-cv-12623, 2020 U.S. Dist. LEXIS 222815, at *19).  This Court's reading of *Johnson II* is that the plaintiffs there had exhausted its investigatory avenues at the pleading stage.  The Court cannot conclude the same here. In this case, it appears that Plaintiff may have access to additional information that could lead to a sufficiently pleaded complaint.  Therefore,

14

the Court cannot conclude at this point that any deficiencies in Plaintiffs' Amended Complaint arises because they "lack the inside information necessary to make out their claims."  Therefore, without pleading additional details as to fee structures and services provided, Plaintiffs' Amended Complaint only infers a possibility but not a plausibility that Defendants acted imprudently.

Accordingly, Defendants' Motion to Dismiss, as regards Count I's excessive RPS fee claim, will be granted.   As it is still not clear at this stage whether amendment would be futile, Plaintiffs will be granted leave to amend.

b.   Lower-Cost Share Classes

Defendants maintain that the Amended Complaint fails to cure the legal deficiencies surrounding their share-class claim. Specifically, they argue that Plaintiffs' latest share-class allegations are "functionally identical to their prior share-class allegations." (ECF No. 49 at pp. 19-20).

Plaintiffs contend that the Amended Complaint alleges additional facts, which support that Defendants breached their fiduciary duties by failing to weigh the costs and benefits of selecting lower cost shares. Specifically, the Amended Complaint avers the more expensive share classes Defendants selected "do not offer potential for higher returns" (ECF No. 44 at ¶ 131); the level of risk and the risk factors are the same for the higher and lower cost share classes (*Id.* at ¶ 132), including both share classes being registered with the SEC and being publicly traded (*Id.* at ¶ 133); the level of Plan participant services offered is irrelevant since the mutual fund investments are made directly by the Plan (*Id.* at ¶ 134); and the use of higher-cost share classes was not necessary to defray the cost of administrative fees (*Id.*).

Defendants respond that Plaintiffs have simply added a sentence stating that direct recordkeeping fees were already too high, making it unreasonable for Defendants to use share classes with revenue sharing to pay any recordkeeping fees.  Accordingly, Defendants argue that the Court should again dismiss this claim as implausible and legally insufficient.

As this Court noted before, there is a dearth of Third Circuit case law that addresses ERISA prudent management criteria in relation to the purchase of higher cost (retail) shares versus lower cost (institutional) shares.   However, "ample authority holds that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach." *White v. Chevron Corp.*, No. 16-0793, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), aff'd, *White III*, 752 F. App'x 453.   For example, the Seventh Circuit, in *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), rejected the claim that fiduciaries breached any Duty of Prudence "by offering 'retail' mutual funds" instead of "'institutional' investment" classes. *Id*. at 670; see also *Kong v. Trader Joe's Co.*,  2020 WL 7062395, at *5 (C.D. Cal. Nov. 30, 2020) , at *4 (rejecting challenge to share class of funds because higher-cost share classes may have offered other benefits that would have offset any additional costs); *Marks v. Trader Joe's Co*., 2020 WL 2504333, at *7-8 (C.D. Cal. Apr. 24, 2020) (dismissing claims and holding that plaintiffs alleged no specific facts to suggest breach of fiduciary duty, and merely offering institutional class shares instead of investor class shares was not enough); *Kurtz v. Vail Corp.*, 511 F.Supp.3d 1185, 1199 (D. Colo. 2021); *Robert Lauderdale et al. v. NFP Ret., Inc. et al.*, 2021 WL 3828646, at *8-9 (C.D. Cal. Aug. 18, 2021) (dismissing share-class cost claims where plaintiffs only allege that some funds could be replaced with lower-cost options).

Despite an absence of Third Circuit authority that addresses the sufficiency of Plaintiffs' share class claim allegations to support a claim for breach of ERISA fiduciary duty, the

persuasive authority matches the principles in *Sweda* discussed above.  To plead an imprudence claim, Plaintiffs must aver more than "a mere possibility of misconduct."  *Sweda*, 923 F.3d at 26.

With regard to Lower-Cost Share Classes, this Court held that the Complaint's averments "were conclusory and containe[d] insufficient facts to support that Defendants' choice of such share classes breached their Duty of Prudence." *Id*. at p. 15.  Further, the Court concluded that, consistent with the Third Circuit's holding in *Sweda v. Univ. of Pa.*, 923 F.3d 320 (2019), Plaintiffs "must aver more than a 'mere possibility of misconduct.'" *Id*.   And the Court noted that although Sweda may suggest a laxer pleading standard than *Twombly/Iqbal*, "Plaintiffs must aver some non-conclusory factual basis that reaches beyond the threshold of a plausible claim rather than a possible claim."  *Id*.

Here, the Plaintiffs aver that Defendants imprudently chose mutual fund share classes with higher costs even though less expensive class shares of the same funds were available. While the Amended Complaint includes a few more assertions than before, said averments do does not sufficiently buttress Plaintiff's imprudence claims. And as with Plaintiffs' excessive RPS fees claim, these allegations contain conclusory and insufficient facts to support that Defendants' choice of such share classes breached their Duty of Prudence to the Plaintiffs. Further, Plaintiffs have not addressed whether the retail share class may have offered other benefits. *See Kong, supra*. Although Plaintiffs have continued to attempt to suggest that a more lax pleading standard should be applied to their Complaint, *Sweda* still supports that the sound principles from *Twombly/Iqbal* remain. Plaintiffs must aver some non-conclusory factual basis that reaches beyond the threshold of a plausible claim rather than a possible claim.  Plaintiffs Complaint and Amended Complaint have not yet done so in this case.

Accordingly, Defendants' Motion to Dismiss, as regards Plaintiffs' share class claim under Count I, will be granted.   Count I of Plaintiffs' Complaint will be dismissed.  As it is not clear at this stage whether amendment would be futile, Plaintiffs will be granted leave to amend.

2.   Failure to Monitor Claim (Count II)

Finally, Defendants again argue that Plaintiffs' Count II Failure-To-Monitor claim fails as a matter of law because it is derivative of Plaintiffs' Count I breach of fiduciary claims. Plaintiffs again respond that they have sufficiently pleaded breach of fiduciary claims at Count I such that Defendants' Motion to Dismiss Count II should be denied.  Courts have held that derivative claims, such as failure to monitor, cannot survive without a sufficiently pleaded underlying breach of fiduciary duty claim.  *See Scalia v. WPN Corp.*, 417 F.Supp.3d 658, 669 (W.D. Pa. 2019) (citing *In re Allergan ERISA Litig.*, 2018 WL 8415676, at *7 (D. N.J. July 2, 2018); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)).  Therefore, because Plaintiffs' underlying claims at Count I will be dismissed, their derivative failure to monitor derivative claim at Count II fails.

Accordingly, Defendants' Motion to Dismiss Count II will be granted.   Because leave has been granted to amend the underlying claims at Count I, Plaintiffs will also be granted leave to amend Count II.

ORDER

After consideration of Plaintiffs' Amended Complaint (ECF No. 44), Defendants' Motion to Dismiss (ECF No. 48), the respective briefs of the parties (ECF Nos. 49-51, 53-57), the Plaintiffs' Notices of Supplemental Authority and Defendants' responses to the same (ECF Nos. 58-61), and for the following reasons and for the foregoing reasons, Defendants' Motion to

Dismiss Pursuant to Fed. R. Civ. 12(b)(6) is granted.   Count I and Count II of Plaintiffs'

Complaint are dismissed.  Plaintiffs are granted leave to amend.

Plaintiffs shall file any second amended complaint on or before April 21, 2022.   Should

no second amended complaint be filed by said date, the clerk will mark the case closed.

DATED this 7th day of April, 2022.

BY THE COURT:

MARILYN J. HORAN
United States District Judge