**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT MATOR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:21-cv-00403-MJH |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| WESCO DISTRIBUTION, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS<br>THE SECOND AMENDED COMPLAINT</u>

Stephanie R. Reiss
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Fl.
Pittsburgh, PA 15219-6401
Telephone: 412.560.3378
Fax:  412.560.7001
stephanie.reiss@morganlewis.com

Deborah S. Davidson (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone:  312.324.1000
Fax:  312.324.1001
deborah.davidson@morganlewis.com

Matthew J. Sharbaugh (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  202.739.5623
Fax:  202.739.3001
matthew.sharbaugh@morganlewis.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 4

    A.   Neither *Hughes* Nor *Sweda* Gives Plaintiffs A Free Pass To Survive A Motion To Dismiss Based On Their Conclusory Allegations. .................................................................................. 4

    B.   Plaintiffs Fail To State A Claim For Breach Of ERISA's Duty Of Prudence. ................................................................................. 6

        1.   Plaintiffs Have Not Stated A Claim for Imprudence With Respect to RPS Fees. .................................................. 6

            a.   Plaintiffs Have Not Adequately Pled Facts Regarding The Services Provided To The Alleged Comparator Plans. ............................................. 7

            b.   Plaintiffs Make Apples-to-Oranges Comparisons And Allegations On Total Fees That Are Contradicted By Their Documents. ............................... 10

            c.   Plaintiffs Still Failed To Avail Themselves Of Investigatory Avenues To Attempt To Support Their Allegations. ............................................. 12

        2.   Plaintiffs Still Fail To Create An Inference of Imprudence Based On Their Inflexible Theory As To The Plan's Share-Class Offerings. .................................................. 13

    C.   Plaintiffs Fail To State A Claim For Breach Of ERISA's Duty to Monitor. ...................................................................... 14

    D.   Plaintiffs Concede That A Dismissal Of The SAC Should Be With Prejudice. ................................................................. 15

III. CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6

*Byers v. Intuit, Inc.*,
No. 07-4753, 2009 WL 948651 (E.D. Pa. Mar. 18, 2009) ......................................11

*Davis v. Salesforce*,
No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022)......................................14

*Dehaven v. Planet Home Lendings, LLC*,
No. 15-cv-380, 2016 WL 692981 (W.D. Pa. Feb. 22, 2016)..................................10

*Edgar v. Avaya, Inc.*,
503 F.3d 340 (3d Cir. 2007)....................................................................................14

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..................................................................................................1

*Hughes v. Northwestern University*,
142 S. Ct. 737 (2022)....................................................................................... *passim*

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
No. 20-1493, 2022 WL 973581 (W.D. Pa. Mar. 31, 2022)......................................2

*Kong v. Trader Joe's Co.*,
No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022)....................................14

*Matney v. Barrick Gold of N. Am., Inc.*,
No. 20-275, 2022 WL 1186532 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-
4045 (10th Cir. May 20, 2022) ....................................................................2, 12, 14

*Mator v. Wesco Distr., Inc.* ("*Mator I*"),
No. 21-403, 2021 WL 4523491 (W.D. Pa. Oct. 4, 2021)............................... *passim*

*Mator v. Wesco Distr., Inc.* ("*Mator II*"),
No. 21-403, 2022 WL 1046439 (W.D. Pa. Apr. 7, 2022)............................... *passim*

*Morales v. Capital One Fin. Corp.*,
No. 21-1454, Dkt. 42, slip. op.  (E.D. Va. May 27, 2022)........................................2

*Perkins v. United Surgical Partners Int'l Inc.*,
 No. 21-973, 2022 WL 824839 (N.D. Tex. Mar. 18, 2022)....................................................2, 8

*Riley v. Olin Corp.*,
 No. 21-1328, 2022 WL 2208953 (E.D. Mo. June 21, 2022) .......................................2, 4, 8, 12

*Smith v. CommonSpirit Health*,
 37 F.4th 1160 (6th Cir. 2022) ........................................................................ *passim*

*Sweda v. Univ. of Pa.*,
 923 F.3d 320 (3d Cir. 2019).............................................................................. *passim*

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
 325 F. App'x 31 (2d Cir. 2009) .............................................................................8

**Statutes**

ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4)............................................................. *passim*

## I.   <u>INTRODUCTION</u>

Through its opening memorandum (Dkt. 67 ("Mem.")), WESCO showed that Plaintiffs failed to "cure[] the pleading deficiencies" that were the basis for the Court's two prior dismissal rulings.  *See Mator v. Wesco Distr., Inc.*, No. 21-403, 2022 WL 1046439, at *3 (W.D. Pa. Apr. 7, 2022) ("*Mator II*"); *Mator v. Wesco Distr., Inc.*, No. 21-403, 2021 WL 4523491, at *6 (W.D. Pa. Oct. 4, 2021) ("*Mator I*").  Nothing in Plaintiffs' Opposition (Dkt. 70 ("Opp'n")) shows otherwise.

For starters, the bulk of Plaintiffs' Opposition reads as though this Court's prior rulings do not even exist.  Plaintiffs insist that ERISA fiduciary-breach claims alleging unreasonable recordkeeping fees—no matter the sufficiency or plausibility of the allegations—should always unlock the doors to discovery and survive a motion to dismiss.  *See* Opp'n at 1 (arguing that courts must deny "motions to dismiss where plaintiffs' [sic] allege a breach of fiduciary duty when plan participants pay unreasonable recordkeeping fees").  They are wrong.  After all, this Court has twice dismissed Plaintiffs' claims as implausible, including after the Supreme Court's decision earlier this year in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022).[1]  And rightly so.  As the Supreme Court reiterated in *Hughes*, courts remain duty-bound to apply "careful, context-sensitive scrutiny of" ERISA fiduciary-breach claims to "divide the plausible sheep from the meritless goats."  *Id.* at 742; *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  For Plaintiffs to now suggest that the Court should not (or cannot) carry out that duty—and rubber-stamp their claims instead—is disingenuous.[2]

---

[1] This Court specifically held that "the Supreme Court's holding [in *Hughes*] neither shifts the pleading standards in Plaintiffs' ERISA claims nor changes this Court's prior or current analysis of Plaintiff's Complaint or Amended Complaint."  *Mator II*, 2022 WL 1046439, at *3.

[2] Plaintiffs' first footnote is a string-cite of cases that they say denied motions to dismiss from "courts in the Third Circuit and nationwide," but the only cited case within the Third Circuit is

In this same vein, Plaintiffs incorrectly contend the Court must refrain from scrutinizing their allegations because, in their view, any plausibility assessment: (a) would be an "improper parsing analysis," (b) would implicate so-called "fact disputes" that must await discovery, or (c) both. These rejoinders likewise miss the mark. Plaintiffs have attempted (repeatedly) to plead their primary recordkeeping-fee fiduciary-breach claim by comparing the fees that the WESCO Plan allegedly paid for retirement plan services ("RPS") to the fees that a handful of other hand-selected plans purportedly paid for RPS services. As WESCO has explained, that pleading approach fails because the prospect that a handful of other 401(k) plans in the vast retirement-plan market might have paid less for certain services than the WESCO Plan does not, in and of itself, allow for a plausible inference that the WESCO Plan's fiduciary process was flawed or imprudent. (Mem. at 13-14.) But even if Plaintiffs could conceivably piece together a claim in this way, they must at minimum show that they are making an apples-to-apples comparison between the WESCO Plan and their comparator plans, both by (a) plausibly demonstrating that

---

*Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-1493, 2022 WL 973581 (W.D. Pa. Mar. 31, 2022), which this Court already addressed in dismissing Plaintiffs' claims the last time. *Mator II*, 2022 WL 1046439, at *7. *Sweda* is the only binding precedent here, and it does not support Plaintiffs' argument that their conclusory allegations of excessive RPS fees and higher-cost share classes state plausible claims, as this Court already (twice) held. *Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d Cir. 2019). Further, Plaintiffs are wrong that post-*Hughes* cases have "overwhelmingly" denied motions to dismiss claims of imprudence based on alleged excessive RPS fees. Plenty of courts since *Hughes* have held that similar fiduciary-breach claims to those alleged here are implausible and insufficient. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal of excessive RPS fee claims); *Riley v. Olin Corp.*, No. 21-1328, 2022 WL 2208953, at *4-5 (E.D. Mo. June 21, 2022) (dismissing excessive RPS fee claims); *Morales v. Capital One Fin. Corp.*, No. 21-1454, Dkt. 42 (Order) (E.D. Va. May 27, 2022) (dismissing excessive RPS fee claims) (attached hereto as Ex. A); *Morales*, No. 21-1454, Dkt. 43 (Transcript) at 31-32 (attached hereto as Ex. B); *Matney v. Barrick Gold of N. Am., Inc.*, No. 20-275, 2022 WL 1186532, at *7, *12 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022) (dismissing excessive RPS fee and share-class claims); *Perkins v. United Surgical Partners Int'l Inc.*, No. 21-973, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022) (dismissing claims for excessive RPS fees).

the comparator plans received the same scope and breadth of services for lower fees, and (b) comparing the WESCO Plan's total alleged fees to the total alleged fees of the comparator plans in the first place.  This Court has already held as much.  *See Mator II*, 2022 WL 1046439, at *6-7; *Mator I*, 2021 WL 4523491, at *6-7.  Plaintiffs cannot erase that history—or otherwise attempt to brush aside their pleading obligations—by claiming that the requisite plausibility analysis under Rule 8 implicates "fact disputes" or amounts to what they view as allegedly improper "parsing" of their conclusory and deficient allegations.

Beyond those untenable global arguments, Plaintiffs' Opposition fails to identify any new allegations in the Second Amended Complaint that arguably "cure the pleading deficiencies" that doomed their prior two attempts to state plausible claims of ERISA fiduciary breach.

First, Plaintiffs hardly address the Court's instruction that they must "address the types or levels of services that any plan contracted to receive," and that a "side by side list comparison" of generalized services that might have been offered does not suffice.  *Mator II*, 2022 WL 1046439, at *6.  By the time Plaintiffs even get around to addressing their services-related allegations, they simply point to the same sort of "side by side list comparison" and "generalized allegations" the Court previously rejected, albeit in some respects slightly rearranged and rephrased.  That sort of superficial restructuring does not and cannot cure Plaintiffs' core deficiencies in failing to plausibly compare like services to like services when alleging that the WESCO Plan paid too much; Plaintiffs are simply shuffling around deck chairs.

Second, Plaintiffs do not allege facts supporting "apples-to-apples" comparisons between the WESCO Plan's alleged fees and the RPS fees they say were paid by other plans.  They repeatedly double-down on their reliance on the NEPC survey as a basis for their claims (*see* Opp'n at 3, 6, 19), even though this Court explicitly rejected that survey as inadequate (just as

many other courts have done).  *Mator II*, 2022 WL 1046439, at *7; *see also Riley*, 2022 WL 2208953, at *4 ("[C]ourts throughout the country routinely reject the 2019 NEPC survey—among others—as a sound basis for comparison because it lacks in detail[.]").  Otherwise, Plaintiffs ignore that they are still not comparing the WESCO Plan's total alleged fees to the total fees charged by their proffered comparator plans—as evidenced by some of the very source documents on which the Second Amended Complaint explicitly relies.  At best, Plaintiffs contend that any disparity should be treated as a fact dispute to be resolved in discovery, even though this Court has already recognized—rightly—that it needs to ensure Plaintiffs are engaged in an apples-to-apples comparison as to RPS fees at the Rule 12(b)(6) stage.

 Finally, Plaintiffs concede they have made no changes to their share-class allegations in the Second Amended Complaint.  Instead, Plaintiffs persist in arguing that offering a share class with higher gross fees is universally and *per se* unreasonable whenever there is an accompanying allegation that recordkeeping fees are too high.  Those are the same allegations that Plaintiffs have pressed twice before without success, and they fare no better a third time around.  *Mator II*, 2022 WL 1046439, at *8-9.

For these reasons, along with those set forth more fully below and in WESCO's opening memorandum, the Court should dismiss the Second Amended Complaint with prejudice.

## II.  <u>ARGUMENT</u>

### A.    Neither *Hughes* Nor *Sweda* Gives Plaintiffs A Free Pass To Survive A Motion To Dismiss Based On Their Conclusory Allegations.

Given the history of this case—and the fact that the Court has dismissed Plaintiffs' claims as implausible on two prior occasions—the Opposition's lead argument is surprising.  Plaintiffs start by arguing that the Supreme Court's decision in *Hughes*, along with the Third Circuit's decision in *Sweda*, compel the denial of WESCO's motion to dismiss.  Opp'n at 7-10.

4

According to Plaintiffs, *Hughes* "firmly cement[ed]" the notion that Plaintiffs have pled plausible claims of fiduciary breach under ERISA, and *Sweda* is "fatal to Defendants' Motion." *Id.* at 8, 10.  But this Court already rejected both of those propositions.

Plaintiffs' argument that WESCO "avoid[ed] any detailed discussion" of *Hughes* and *Sweda* (Opp'n at 8) is perplexing.  After all, Section III.A.1.c. of WESCO's most recent brief was all about *Sweda* (Mem. at 20-21), and WESCO likewise cited *Hughes* several times (*id*. at 7, 19).  Plus, the parties already devoted many pages to those cases in past briefing.  Prior to the Court's dismissal of the First Amended Complaint, both sides filed several briefs devoted solely to *Hughes* (Dkts. 53, 54, 56 & 57), and WESCO likewise discussed *Sweda* extensively throughout both prior rounds of motion-to-dismiss briefing (*see* Dkts. 28, 36, 49 & 51).  So WESCO hardly "avoid[ed]" discussion of those cases.  There was no need to belabor those cases any further, given the substantial attention they received in prior filings, and—more importantly—the Court's past rejection of Plaintiffs' same arguments.  *See, e.g., Mator I*, 2021 WL 4523491, at *7 (rejecting Plaintiffs' "attempt to suggest that a more lax pleading standard should be applied to their Complaint" and holding that *Sweda* still supports that Plaintiffs "must aver some non-conclusory factual basis that reaches beyond the threshold of a plausible claim rather than a possible claim"); *Mator II*, 2022 WL 1046439 at *3, *8 (same as to *Sweda*, and also stating that *Hughes* "neither shifts the pleading standards in Plaintiffs' ERISA claims nor changes this Court's prior or current analysis of Plaintiff's Complaint or Amended Complaint").

As this Court stated, because *Hughes* does not change the governing pleading standards for ERISA fiduciary-breach claims, Plaintiffs are still required to plead sufficient facts to move their claims from "possible to plausible."  *See Mator II*, 2022 WL 1046439, at *6, *7.[3]  This is

---

[3] For some reason, Plaintiffs characterize this as "stale language."  *See* Opp'n at 7 n.4.  It is not.

not a "shifting" of any burden, but a straightforward application of the standard requirements of Rule 8. *See Hughes*, 142 S. Ct. at 742 (instructing court on remand to "consider whether petitioners have *plausibly* alleged a violation of the duty of prudence" while "applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).") (emphasis added); *see also Iqbal*, 556 U.S. at 678 (plausibility requires the plaintiff to plead sufficient facts and law to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Sweda*, 923 F.3d at 326 (to plead an imprudence claim, plaintiffs must aver more than "a mere possibility of misconduct.") Indeed, the Sixth Circuit recently reinforced this standard when affirming dismissal of ERISA fiduciary-breach claims, stating: "[a]s to the recordkeeping fees, Smith fails to give the kind of context that could move this claim *from possibility to plausibility*." *CommonSpirit Health*, 37 F.4th at 1169 (emphasis added). Plaintiffs' attempt to escape scrutiny of their allegations by trying—once again—to seek refuge in *Hughes* or *Sweda* falls flat.

### B. Plaintiffs Fail To State A Claim For Breach Of ERISA's Duty Of Prudence.

#### 1. Plaintiffs Have Not Stated A Claim for Imprudence With Respect to RPS Fees.

Plaintiffs make no real attempt to address either (a) their failure to plead non-conclusory facts about the specific services provided for RPS fees, or (b) their failure to plead facts about comparator RPS fees that are consistent with the documents upon which they rely. They also make no attempt to follow this Court's suggestion that they request documents under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), that might have provided them with additional information. Instead, Plaintiffs repeatedly try to sweep all of this aside by miscasting WESCO's challenge to their own continued pleading flaws as some improper attempt to "parse" their allegations (Opp'n at 11, 12-14, 15-16), or as creating a "factual dispute" about things such as

"the level or quality of services" or "whether the comparator plans are apt comparators" that should be resolved later in the litigation. *Id.* at 12, 15-16. Those rejoinders are wrong. Plaintiffs have adopted a pleading strategy that asks the Court to infer an imprudent fiduciary process based on their allegations that the WESCO Plan's RPS fees were unreasonably higher than those paid by other plans. Given Plaintiffs' choice to plead their claims in this way, Plaintiffs must at minimum show that their allegations are meaningfully comparing the WESCO Plan's services and fees to those of their chosen comparator plans. That is the very analysis this Court has twice undertaken in evaluating the plausibility of Plaintiffs' prior allegations. And in so doing, the Court has rightly recognized that holding Plaintiffs to their burden under Rule 8 to plead sufficient facts to plausibly support their claims is not—as Plaintiffs now wrongly contend— tantamount to improperly "parsing" their claims or resolving factual issues. *See Mator II*, 2022 WL 1046439 at, *6-7 (dismissing where "Amended Complaint again avers primarily a price tag to price tag comparison" and merely made conclusory allegations about the nature of the recordkeeping services); *Mator I*, 2021 WL 4523491, at *7 (same).[4] Again, Plaintiffs' attempt to escape any judicial review of their allegations is entirely without basis.

### a.   *Plaintiffs Have Not Adequately Pled Facts Regarding The Services Provided To The Alleged Comparator Plans.*

To state a plausible fiduciary-breach claim based on the Plan's claimed RPS fee amounts, Plaintiffs must at minimum plead facts that create a plausible inference that the Plan's fees were unreasonably excessive *in relation to the services rendered. See, e.g.*, *CommonSpirit Health*, 37 F.4th at 1169 ("Smith has failed 'to allege that the fees were excessive relative to the services

---

[4] The same arguments about improper "parsing" were made by the plaintiffs in *CommonSpirit Health* and were rejected by the Sixth Circuit when it affirmed dismissal. *See Smith v. CommonSpirit Health,* No. 21-5964, 2021 WL 6068742, at *18 (Br. of Plaintiff-Appellant at 11); *CommonSpirit Health*, 37 F.4th 1160 (affirming dismissal).

rendered[.]'") (quoting *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)); *Riley*, 2022 WL 2208953, at *4 ("[P]laintiff must plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue."); *Perkins*, 2022 WL 824839, at *6 (same and noting that comparison of fees to those in NEPC report was insufficient); *Morales*, Tr. at 31-32 (Ex. B) (dismissing RPS fee claims because allegation that "there are other plans referenced that have less expensive recordkeeping fees" is not enough to state a viable claim).[5]

Plaintiffs do not meet that threshold here, essentially conceding (as they must) that they made no substantive changes to their allegations about the services offered for various RPS fees. Plaintiffs simply quote a few paragraphs on Wells Fargo's services to the Plan from the Second Amended Complaint (Opp'n at 13) that are identical to paragraphs in the First Amended Complaint, virtually unchanged.  *Compare* SAC ¶¶ 93-94, *with* Am. Compl. ¶¶ 94-95; *see also* Mem. at 11-12.  And as for the comparator plans, Plaintiffs once again argue that all large recordkeepers *offer* the same or similar services—and cite to another list of all possible services that they say are offered by all large recordkeepers—without plausibly alleging the services the other plans contracted to receive, let alone that they were the same services that the WESCO Plan received.  Opp'n at 14.  These are the same generalized allegations this Court already rejected.  *See Mator II*, 2022 WL 1046439, at *6 (this sort of broad "side by side list comparison does not sufficiently place the Defendants on notice or slide Plaintiffs['] claims from 'possible to

---

[5] Plaintiffs argue that they do not need to directly allege how WESCO supposedly mismanaged the Plan because imprudence can be inferred from circumstantial evidence.  Opp'n at 10-11.  But even under the latter approach, the circumstantial facts alleged must still be sufficient to move the allegations from possible to plausible.  *See, e.g.*, *Mator II*, 2022 WL 1046439, at *6, *7.

plausible.'").[6]  Otherwise, in response to WESCO's point that so many facets of recordkeeping services can vary from recordkeeper to recordkeeper and from plan to plan—and thus are not commoditized (Mem. at 12)—Plaintiffs again retreat to claiming that those are fact disputes that must await discovery.  Opp'n at 16.  That is wrong, as this Court has already held.

Plaintiffs also refer to the NEPC study as supporting their claims on total fees (as discussed further below).  But this Court explicitly rejected Plaintiffs' reliance on the NEPC survey—a fee study without any information about the corresponding services that the surveyed plans received in exchange for the reported fees.  *Mator II*, 2022 WL 1046439, at *7 ("the 2019 NEPC survey does not contain any information about the services provided to the surveyed plans" and it was therefore "an incongruent comparison").  In fact, on this point, the Sixth Circuit also just affirmed dismissal of RPS-fee claims premised on similar comparisons to industry average RPS fees without specific allegations that "the services that CommonSpirit's fee covers are equivalent to those provided by the plans comprising the average in the industry publication that she cites."  *CommonSpirit*, 37 F.4th at 1169.

In short, Plaintiffs have come nowhere close to curing their pleading deficiencies concerning the "nature and scope of services provided by the alleged comparator plans," as required to allow for the requisite "apples-to-apples" comparison to support their claims.  Instead, Plaintiffs still fail to move their allegations from the possible to the probable.

---

[6] Plaintiffs argue that WESCO should have offered evidence about how the recordkeeping services provided by Wells Fargo to the Plan were "unique."  Opp'n at 14.  But that would turn Rule 8 on its head.  After all, it is not WESCO's burden to disprove Plaintiffs' allegations at the pleadings stage; it is Plaintiffs' burden to put forward plausible allegations in the first place.  *See, e.g., Hughes*, 142 S. Ct. at 742 (instructing the court on remand to consider whether *plaintiffs* "plausibly alleged a violation of the duty of prudence").

      **b.**    ***Plaintiffs Make Apples-to-Oranges Comparisons And Allegations On Total Fees That Are Contradicted By Their Documents.***

As WESCO explained (Mem. at 15-17), Plaintiffs also failed to cure the deficiencies associated with how they pleaded the supposed amount of RPS fees that the WESCO Plan paid versus the amount of RPS fees that their hand-selected comparator plans ostensibly paid.

As an initial point, the Opposition ignores that Plaintiffs admittedly used a different method and different source materials to tabulate the alleged RPS fees paid by other plans—*i.e.*, by relying on purportedly "publicly available revenue sharing rates" in documents that they refuse to identify, or omitting indirect revenue-sharing fees altogether—which is not an apples-to-apples framework for comparing to the WESCO Plan's alleged fees, which Plaintiffs calculated based on the Form 5500s and the revenue-sharing rates listed in the Plan's recordkeeping agreement.  As WESCO noted, especially considering that Plaintiffs have twice failed to meet the plausibility requirements of Rule 8, they needed to show the work behind their calculations to ensure they are comparing total fees to total fees, *i.e.*, "Granny Smith" apples to "Granny Smith" apples or "Honeycrisp[s]" to "Honeycrisp[s]."  *Mator II*, 2022 WL 1046439, at *6.

Plaintiffs likewise offer no meaningful response to the fact that, at least in several instances, they continue to compare the WESCO Plan's total alleged fees (according to Plaintiffs, both direct and indirect fees) to only some of the fees for their comparator plans (direct fees only).  At best, Plaintiffs dispute that reality and insist they are comparing "total fees" to "total fees" (Opp'n at 18-19), but that rejoinder is belied by the Form 5500s on which they rely.  *See* SAC ¶¶ 97 n.16, 102 n.21 (citing Form 5500s).[7]  Those documents show, for

---

[7] Under the Rule 12(b)(6) standard, when there is a contradiction between a complaint's allegations and the contents of a document upon which the complaint relies, the document controls.  *See, e.g., Dehaven v. Planet Home Lendings, LLC*, No. 15-cv-380, 2016 WL 692981,

instance, that Plaintiffs' so-called "total fees" include only direct fees, but not indirect fees, for at least several of their comparator plans—such as the Red Lobster 401(k) Plan and the Edward-Elmhurst Plan.  *See* Mem. at 16-17 (*Comparing* SAC ¶ 106 *with* Ex. 25 (Edward-Elmshurst 2018 Form 5500, Sch. C) and SAC ¶ 102 *with* Ex. 26 (Red Lobster 2018 Form 5500, Sch. C)).  If Plaintiffs were truly comparing "total fees" to "total fees," then both the direct and indirect fees paid by those plans needed to be included in Plaintiffs' comparator fee chart.  They were not. Plaintiffs offer no explanation for this contradiction between their allegations and the cited Form 5500, beyond calling it another "fact dispute" that they say cannot be considered.[8]  Not so. Plaintiffs must plead plausible allegations to state actionable claims under Rule 8.  And given Plaintiffs' persistent pleading deficiencies, the Court cannot accept as plausible the assertion that sixteen plans paid significantly less in "total" fees than the WESCO Plan.

Plaintiffs also point to their allegation that WESCO did not conduct requests for proposals (or "RFPs") for recordkeeping services until 2019, but because nothing in ERISA

---

at *2 (W.D. Pa. Feb. 22, 2016) ("[A] court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit") (citation omitted); *Byers v. Intuit, Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. Mar. 18, 2009) ("When allegations in a complaint are contradicted by the materials … referenced in the complaint, the document controls and the court need not accept as true the allegations of the complaint.") (internal quotations and citation omitted).

[8] At most, Plaintiffs say the Court should pretend like their flawed allegations do not exist, and simply rely on their allegations that five other plans used the same recordkeeper as the WESCO Plan and paid less.  That approach fares no better.  *Even assuming* Plaintiffs were comparing "total fees" to "total fees," and *even assuming* Plaintiffs plausibly alleged that those other plans received the same scope and breadth of services as the WESCO Plan—and they did not, *see* Mem. at 11-13; *supra* at 8-9—the fact that a handful of other plans across the vast 401(k) plan universe may have paid less for recordkeeping services in a single year (2018) across the relevant period is not enough to show that the WESCO Plan's fiduciary process was imprudent. Under that logic, every plan except the one that negotiated the cheapest services would be subject to claims of fiduciary breach.  Given that ERISA requires prudence, not perfection, that cannot be the law.  *Hughes*, 142 S. Ct. at 742 (in evaluating ERISA fiduciary-breach claims at Rule 12(b)(6), courts "must give due regard to the range of reasonable judgments a fiduciary may make," as "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs").

11

requires fiduciaries to do so, those allegations do not support an inference of imprudence either. *See*, *e.g.*, *Riley*, 2022 WL 2208953, at *5 (allegations of excessive RPS fees and that "the investment committee failed to conduct periodic requests for proposal and to renegotiate" were insufficient "to draw an inference that the investment committee acted imprudently" because there was no "legal foundation" for requiring them) (citation omitted); *Matney*, 2022 WL 1186532, at *12-13 (dismissing challenge to recordkeeping and administrative fees as "based on generalizations, assumptions, and unsuitable comparisons"; noting that "nothing in ERISA requires a fiduciary to obtain competitive bids at any regular interval").

Plaintiffs also invoke the NEPC survey in arguing about "total fees." Opp'n at 19. Plaintiffs' steadfast reliance on a survey that this Court already rejected as basis for their claims is reflective of their insufficient approach to their claims writ large.

      **c.**      ***Plaintiffs Still Failed To Avail Themselves Of Investigatory Avenues To Attempt To Support Their Allegations.***

Finally, when it comes to Plaintiffs' RPS-fee allegations, they completely ignored the Court's suggestion to pursue additional investigatory steps—including a statutory document request under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4)—to further explore and potentially elucidate their claims. The Opposition backhands the idea altogether, saying that WESCO's argument is "specious." Opp'n at 19-20. This rejoinder misses the mark.

For starters, it was the Court—not WESCO—that suggested Plaintiffs might want to take advantage of the additional information ERISA makes available to them by statute. So, to the extent Plaintiffs are calling that idea "specious," they are criticizing the Court and its prior analysis and wrongly so. After all, the Court was right to take note of the robust disclosure scheme that Congress created in ERISA and the fact that Plaintiffs have chosen not to avail themselves of the additional sources of information available. Plaintiffs may be correct that they

are not necessarily "required to make a request" for plan documents under ERISA before bringing suit (Opp'n at 20), but even if not "required," that sort of investigatory legwork might prove illuminating when it comes to the plausibility of their allegations—especially after they have failed to state actionable claims twice over.  Indeed, the Sixth Circuit in *CommonSpirit* just reiterated that ERISA's disclosure requirements can go a long way toward helping plaintiffs in these cases assess the plausibility of a potential claim for fiduciary breach, recognizing that "ERISA's extensive disclosure requirements ease the burdens."  *CommonSpirit*, 37 F.4th at 1168.  Plaintiffs failed to seek any disclosures here and take the position they do not need any additional information to state a claim.  Considering that Plaintiffs (and their counsel) chose not to take even that most basic investigatory step, it is especially disingenuous for Plaintiffs to argue that their failure to allege plausible factual details should be overlooked under the guise of "fact disputes" or allegedly improper "parsing."[9]

### 2. Plaintiffs Still Fail To Create An Inference of Imprudence Based On Their Inflexible Theory As To The Plan's Share-Class Offerings.

Plaintiffs additionally ignored the Court's directive that they address "whether the retail share class may have offered other benefits" or otherwise "aver some non-conclusory factual basis that reaches beyond the threshold of a plausible claim rather than a possible claim."  *Mator II*, 2022 WL 1046439, at *8.  Instead, they once again try to hide behind the same flawed contention that WESCO is trying to "parse" their allegations (Opp'n at 21), as a basis to defend their failure to plead sufficient facts.  As WESCO pointed out in its original memorandum,

---

[9] While Plaintiffs argue that they would not have received the Wells Fargo recordkeeping fee agreement in response to an ERISA statutory document request, the fact remains that they did not even try.  Plus, as WESCO pointed out, Plaintiffs could have at least requested the current Fidelity recordkeeping agreement (among other documents), which might have helped elucidate their allegations about whether the services the WESCO Plan received from Wells Fargo were the same or similar, as they conclusorily allege.

Plaintiffs' allegations about share classes are virtually identical to those in the First Amended Complaint and remain firmly grounded on the inflexible proposition that offering more expensive share classes, even where they may offer greater revenue sharing, is *per se* imprudent. *See* Mem. at 19 (*comparing* SAC ¶¶ 135-36, 139, *with* Am. Compl. ¶ 134, and Compl. ¶¶ 25, 30, 129-131). Plaintiffs fail to identify any new allegations in support of their share-class claims in the Second Amended Complaint; they just insist the Court should change course and reverse its prior holding. That tactic fails. Because Plaintiffs once again offer the same "conclusory and insufficient facts to support that Defendants' choice of such share classes breached their [d]uty of [p]rudence," Plaintiffs have failed to state any plausible claim. *Mator II*, 2022 WL 1046439, at *8; *see also Matney*, 2022 WL 1186532, at *7 ("[a]lleging only the inclusion of more expensive share classes is not enough to suggest imprudence") (internal quotations and citations omitted).[10] Plaintiffs chose not to even attempt to offer any new allegations to cure the pleading deficiencies that have twice doomed their share-class claim, and it still fails.

### C. Plaintiffs Fail To State A Claim For Breach Of ERISA's Duty to Monitor.

Plaintiffs do not dispute—nor could they—that there can be no breach of the duty to monitor without an underlying breach of the duty of prudence, as both this Court and the Third Circuit have recognized. *See* Mem. at 21 (citing, *e.g.*, *Mator II*, 2022 WL 1046439, at *9, *Mator I*, 2021 WL 4523491, at *8; *Edgar v. Avaya, Inc.*, 503 F.3d 340, 349 n.15 (3d Cir. 2007)).

---

[10] Plaintiffs rely heavily on two recent unpublished Ninth Circuit decisions in *Davis v. Salesforce*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022), and *Kong v. Trader Joe's Co.*, No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022), for their share-class argument. But to the extent these cases suggest that allegations of failure to use the least expensive share class—standing alone—can suffice to state a claim of imprudence under ERISA, they are in conflict with the Third Circuit's binding precedent in *Sweda*, which expressly declined to hold that such allegations by themselves can suffice. *Sweda*, 923 F.3d at 332 n.7 (explaining that the contention that Penn "frequently selected higher cost investments when identical lower-cost investments were available … is *one of many allegations* that, *together*, plausibly allege that Penn breached its fiduciary duty" (emphases added)).

Because Plaintiffs have not stated plausible claims for breach of the duty of prudence, Plaintiffs' duty-to-monitor claims also fail.

**D.      Plaintiffs Concede That A Dismissal Of The SAC Should Be With Prejudice.**

WESCO's opening brief explained why the Court's dismissal of the Second Amended Complaint should be with prejudice, without affording Plaintiffs a fourth bite at the pleading apple. *See* Mem. at 21-22.  Plaintiffs' Opposition ignores that issue altogether, and Plaintiffs did not request (still) another opportunity to amend their claims—let alone with any sort of explanation for how they would propose to cure their persistent pleading deficiencies. Accordingly, the Court should dismiss the Second Amended Complaint with prejudice.

**III.    CONCLUSION**

For the above reasons, and those set forth in its opening brief, WESCO requests that the Court dismiss this action in full and with prejudice.

Dated:  July 18, 2022

*s/ Stephanie R. Reiss*

Stephanie R. Reiss
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Fl.
Pittsburgh, PA 15219-6401
Telephone: 412.560.3378
Fax:  412.560.7001
stephanie.reiss@morganlewis.com

Deborah S. Davidson (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone:  312.324.1000
Fax:  312.324.1001
deborah.davidson@morganlewis.com

Matthew J. Sharbaugh (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:  202.739.5623
Fax:  202.739.3001
matthew.sharbaugh@morganlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Stephanie R. Reiss, hereby certify that on this 18th day of July, 2022, a true and correct copy of the foregoing Reply in Support of Defendants' Motion to Dismiss the Second Amended Complaint was served upon all counsel of record via the ECF system.

*/s/ Stephanie R. Reiss*
Stephanie R. Reiss

17